**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

NICHOLAS SCOTT WERLING,

Plaintiff,

v.

SARAH JOY MAZUR and FEDERAL BUREAU OF INVESTIGATION,

Defendants.

Case No. 25-CV-244-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff Nicholas Scott Werling ("Werling") sues Sarah Joy Mazur ("Mazur") and the Federal Bureau of Investigation ("FBI") for allegedly violating his constitutional rights and the Stored Communications Act ("SCA"). ECF No. 1. Werling also moves for leave to proceed without prepaying the filing fee. ECF No. 2. This Order grants that motion, screens Werling's complaint, and concludes that the case must be stayed at this time pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).

## 2. MOTION TO PROCEED IN FORMA PAUPERIS

A party proceeding pro se may submit to the court a request to proceed without prepaying the otherwise required filing fees, otherwise known as a motion to proceed in forma pauperis. "The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits." *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Neitzke v. Williams*, 490 U.S. 319, 324

(1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).[1]

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

It follows that a litigant whose complaint does not meet the criteria in 28 U.S.C. § 1915(e)(2) or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc*. 461, F.2d 649, 651 (7th Cir. 1972), a

[1]Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.,* 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other grounds as recognized by Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999); *see also Mitchell v. Farcass,* 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring).

pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

The Court finds that Werling is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a). He represents under oath that he is employed and makes about $1,000.00 per month. ECF No. 2 at 1–2. He receives additional support from his mother. *Id.* at 2. His monthly expenses total about $1,000.00, and he additionally is responsible for fees in a state court matter. *Id.* at 2–4. He has meager assets: a car valued at $2,000.00 and about $250.00 in bank accounts. *Id.* at 3. Based on these representations, the Court is satisfied that he is indigent. For the reasons stated below, the Court also finds that Werling's complaint, despite being subject to a stay at this time, generally clears the 28 U.S.C. § 1915(e)(2) threshold and survives screening. Accordingly, the Court will grant Werling's motion for leave to proceed without prepayment of the filing fee. ECF No. 2.

## 3. SCREENING THE COMPLAINT

### 3.1 Legal Standard

As noted above, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900

(7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 3.2 Werling's Factual Allegations

Werling is currently subject to an ongoing state prosecution for a firearm offense. ECF No. 1 at 5 (referencing state case); *State of Wisconsin v. Nicholas S. Werling*, Milwaukee Cnty. Cir. Ct. Case No. 2022CF002289, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CF002289&countyNo=40&index=0&mode=details (last visited May 30, 2025) (case filed June 13, 2022, charging Plaintiff with violating Wis. Stat. § 941.29(1m)(e)) (hereinafter the "State Case").[2]

Werling alleges that, in November 2021, Mazur, an FBI special agent, "made false representations to Meta (and possibly other social media/technology companies)" to get the companies to disclose private, direct messages from Werling's Facebook and Instagram accounts to the FBI. ECF No. 1 at 2–4. Werling avers that Mazur relied on 18 U.S.C. § 2702(b)(8), part of the SCA, in requesting these disclosures. *Id.* at 4. This statute permits an electronic communication service provider to voluntarily disclose "the contents of a[n electronic] communication . . . to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications related to the emergency." 18 U.S.C. § 2702(b)(8).

[2]The Court may take judicial notice of public records, including state court records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Werling states that Mazur and the FBI had no evidence of any emergency or crime on which to base the request for disclosures. ECF No. 1 at 4. He also seems to contend that Mazur and the FBI lacked a warrant or probable cause to seek the messages. *See id.* ("[T]hey knew that . . . there was no way they could reach the threshold of probable cause that they would need to obtain [Werling's] private communications the constitutionally sound way (that is, with a valid warrant signed by a neutral and detached magistrate) . . . ."). He further suggests that the FBI "made up" the so-called emergency in order to fabricate criminal charges against him. *Id.* at 4–5.[3] He says that the messages disclosed by Meta or other companies to the FBI were disseminated to various law enforcement and prosecutorial agencies and are now part of the evidence against Werling in the State Case. *Id.*

Werling purports to bring a claim under the SCA as well as a claim for a Fourth Amendment unlawful search under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (hereinafter "*Bivens*") related to this disclosure of his private, direct messages on Facebook and Instagram to law enforcement. *Id.* at 5.[4] He further asserts that in June 2022, presumably after the State Case

[3]It seems that Werling does not know the exact nature of Mazur and the FBI's representations to Meta. Werling states that the FBI has "refused to turn over" to him any of its communications with Meta "which claimed that there was an emergency." ECF No. 1 at 5. If Werling does not have these materials, it is unclear how he knows the FBI's purported legal basis for its request to Meta. But in any event, the Court—as it must do at the screening stage—will credit Werling's accusations that the FBI invoked § 2702(b)(8) and asserted that there was an emergency.

[4]Werling has not sued Meta for allegedly disclosing his messages to law enforcement or alleged that Meta acted wrongfully in any way.

commenced, the FBI refused to turn over material related to its request to Meta, in violation of its obligation to do so under *Brady v. Maryland*, 373 U.S. 83 (1963) (hereinafter "*Brady*"). *Id.* He includes some explanation for why his claims are not barred by the statute of limitations. *Id.*

For relief, Werling seeks a declaratory judgment that Mazur and the FBI "violated [his] constitutional rights by abusing the [SCA]" and a total of $40 million in compensatory and punitive damages. *Id.* at 6.

### 3.3 Analysis

Werling asserts a Fourth Amendment claim, a claim for violation of the SCA, and a *Brady* due process claim. *Id.* at 5. The Court examines each claim in turn. None is frivolous, but each claim presents some issues which may ultimately bar Werling from pursuing or recovering on it. Moreover, Werling cannot proceed in federal court at this time because all his claims are subject to *Younger* abstention. For this reason, as explained below, the Court must stay this case.

#### 3.3.1 Fourth Amendment Claim

"The Fourth Amendment prohibits, with limited exceptions, warrantless searches." *Gibbs v. Lomas*, 755 F.3d 529, 542 (7th Cir. 2014) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). "[W]arrantless searches are permissible if law enforcement has probable cause to believe that illegal activity is occurring and that exigent circumstances are present." *United States v. Karmo*, 109 F.4th 991, 995 (7th Cir. 2024) (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 769 (7th Cir. 2000) and *Carpenter v. United States*, 585 U.S. 296, 319 (2018)).

A plaintiff may pursue money damages for a warrantless Fourth Amendment search that is not justified by probable cause and exigent circumstances. *See Anderson v. City of W. Bend Police Dep't*, 774 F. Supp. 2d

925, 939, 945 (E.D. Wis. 2011) (Fourth Amendment claim based on warrantless entry into home and search of person after arrest). In addition to showing that the search lacked a proper legal basis, a plaintiff pursuing this type of Fourth Amendment claim must show that he "has a legitimate expectation of privacy in the invaded place." *United States v. Lusk*, 645 F. Supp. 3d 879, 885 (N.D. Ind. 2022) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

Werling alleges that Mazur sought to, and did, access the contents of his private messages on social media without a warrant or probable cause and exigent circumstances, and based on inaccurate representations to Meta. These allegations support a claim sufficient to survive screening that the FBI's request to Meta to disclose the content of his direct messages, and Meta's subsequent disclosure thereof, violated the Fourth Amendment's prohibition on warrantless searches that are not otherwise justified with probable cause and exigent circumstances. However, this claim can only proceed against Mazur, not against the FBI. *Sutton v. Donahoe*, Nos. 11 C 5912 and 11 C 5961, 2012 WL 2863559, at *5 (N.D. Ill. July 11, 2012) (explaining that the Supreme Court has declined to permit federal agencies to be sued directly under *Bivens* (citing *FDIC v. Meyer*, 510 U.S. 471, 486 (1994))).

This claim raises several legal questions which the Court will note but leave for later resolution. First, it is not clear whether these facts amount to a search within the meaning of the Fourth Amendment. *See Karmo*, 10 F.4th at 995 ("[a]ssuming (without deciding) that a Fourth Amendment search occurred" when the government obtained the defendant's real-time cell site location information under the SCA's exigent circumstances exception, 18 U.S.C. § 2702(c)(4)). For his private messages on social media

to qualify for Fourth Amendment protection, Werling must have had a reasonable expectation of privacy in those messages; whether his expectation of privacy in the messages was reasonable may be a point of debate. *United States v. Cox*, 465 F. Supp. 3d 854, 856 (N.D. Ind. 2020) (discussing case law regarding the reasonable expectation of privacy requirement and analyzing motion to suppress records of the defendant's activity on Facebook).

Second, Werling invokes *Bivens* as authorizing this Fourth Amendment claim, but whether *Bivens* provides a proper legal basis for Werling to bring this claim is unclear. The *Bivens* doctrine originated in the context of a Fourth Amendment unreasonable search and seizure claim against officers of the Federal Bureau of Narcotics; the United States Supreme Court permitted the plaintiff to raise such a claim against those federal officers. 403 U.S. at 389, 397 ("For we have here no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents . . . ."). However, since *Bivens* was decided, "the Supreme Court has consistently declined" to expand its holding to constitutional claims against federal officers and agents arising in new and different contexts. *Sargeant v. Barfield*, 87 F.4th 358, 363 (7th Cir. 2023) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). "[W]hen presented with a constitutional claim for money damages against an individual federal agent, a court should first consider whether the case differs in a meaningful way from *Bivens* claims previously authorized by the Supreme Court." *Curtis v. Jarrett*, No. 22-CV-02082-JPG, 2023 WL 5289240, at *2 (S.D. Ill. Aug. 17, 2023) (citing *Ziglar*, 582 U.S. at 139–40). Werling's claim is, like Bivens's, a Fourth Amendment unreasonable search claim, so the Court sees no reason at this juncture to

preclude him from pursuing it, but may later revisit the topic of whether a *Bivens* claim can be sustained in this context. *See Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 563–65 (7th Cir. 2022) (examining but not deciding whether a lawsuit challenging a "search authorized pursuant to a fabricated search warrant" is a new *Bivens* context).

Although Werling's allegations say enough to make out a Fourth Amendment claim sufficient to survive screening, the claim cannot proceed in federal court at this time because the State Case is ongoing. The doctrine of *Younger v. Harris* "requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010) (citing *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007)). *Younger* abstention reflects "the basic principles of equity, comity, and federalism." *Id.* "There are three exceptions to the rule requiring abstention: (1) the state proceeding is motivated by a desire to harass or is conducted in bad faith, (2) there is an extraordinarily pressing need for immediate equitable relief, or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions." *Harris v. Ruthenberg*, 62 F. Supp. 3d 793, 799 (N.D. Ill. 2014) (citing *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 664 (7th Cir. 2007)). Where *Younger* applies, the district court may either stay or dismiss the case, depending on the type of relief sought. *See Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (collecting cases).

*Younger* abstention arises in this case because, although Werling does not expressly seek the Court's intervention in the State Case (rather, he seeks a finding of Mazur's liability and money damages), adjudicating the Fourth Amendment claim in his favor could imply that some of the

prosecution's evidence in the State Case is invalid. Doing so would disrupt the State Case, depriving the state court of the opportunity to decide evidentiary issues in the first instance and undermining *Younger*'s concerns for comity and federalism.

None of the articulated exceptions to *Younger* abstention applies here. The bad faith exception is a high bar. "The mere continuation of the case against [Plaintiff] . . . does not constitute harassment, let alone harassment for *Younger* purposes." *Harris*, 62 F. Supp. 3d at 799–800 (citing *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811 (7th Cir. 2014), where "the county election board was set to invoke a law against a candidate, despite the fact that it had been ruled unconstitutional in another proceeding against the board itself" as an example of the bad faith exception, but even then a "close call"). While Werling may not like the fact that he is subject to prosecution in the State Case, he has made no concrete factual allegations (apart from the allegations that make up his Fourth Amendment claim itself) from which the Court could infer that the State Case is brought in bad faith or for the purpose of harassment.

Likewise, the Court sees no "extraordinarily pressing need for immediate equitable relief"—or, more accurately here, for the Court to adjudicate a claim for liability and damages that could call state court evidentiary rulings into doubt—because Werling has not shown he "has no forum to address" the alleged constitutional violation. *Id.* There is no reason to believe that he is not able to litigate his Fourth Amendment challenge during the State Case proceeding nor any reason to believe that the state court is unable to resolve the federal questions presented. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to

resolve federal questions presented in state-court litigation mandates that the federal court stay its hand."). To the contrary, the fact Werling has filed a number of pretrial motions strongly suggests that he has ample opportunity to present his arguments to that court. *See* State Case, Aug. 1, 2022, July 12, 2023, June 24, 2024, Sept. 10, 2024, and Apr. 28, 2025 docket entries.

Finally, Werling does not argue that the SCA, which permitted Mazur to seek his social media messages, nor that the statute under which he is charged in the state case, is flagrantly unconstitutional, so the Court will not address this exception to *Younger* abstention further. For all these reasons, the Court must abstain from hearing Werling's Fourth Amendment claim; because Werling primarily seeks damages, the Court will stay the case. *Gakuba*, 711 F.3d at 753 ("Because monetary relief is not available to him in his defense of criminal charges, however, . . . the district court should have stayed rather than dismissed Gakuba's civil-rights claims." (collecting cases)).

#### 3.3.2 SCA Claim

As already noted, 18 U.S.C. § 2702(b)(8) permits an electronic communication services provider to disclose the content of certain messages sent on its platforms to law enforcement in some emergency situations. Law enforcement may make a request to the communications provider to voluntarily disclose such messages. *See, e.g.*, *United States v. Chhipa*, No. 1:23CR97 (DJN), 2024 WL 4682296, at *1, *4 (E.D. Va. Nov. 5, 2024) (analyzing motion to suppress "information and content," including the defendant's direct messages, "obtained by the Government in response to two requests for voluntary disclosures from Facebook under the . . . SCA . . . § 2702(b)(8)"); *United States v. Hammond*, 996 F.3d 374, 386 (7th Cir. 2021)

(examining a separate but similar subsection of § 2702 and noting that "§ 2702 does not compel telecommunications carriers to provide records to law enforcement . . . [but] permits carriers to release records [such as cell site location information] to a governmental entity" in emergency situations); *Electronic Communications Privacy Act*, ELEC. PRIV. INFO. CTR., https://epic.org/ecpa/ (last visited May 30, 2025) ("Although it is voluntary for the provider to act under [§ 2702], many do in practice.").

"Any person who is aggrieved by any willful violation of [§ 2702] . . . may commence an action in the United States District Court against the United States to recover money damages." 18 U.S.C. § 2712(a); *see Dougherty v. U.S. Dep't of Homeland Sec.*, No. 22-40665, 2023 WL 6123106, at *3 & n.13 (5th Cir. Sept. 19, 2023) (noting in dicta that the United States has waived sovereign immunity for claims under § 2712). Against this backdrop, Werling has a colorable SCA claim against the FBI as an agency of the United States (but likely not proceed on this claim against Mazur, as such a claim would be duplicative). *See* 18 U.S.C. § 2712(a).

However, *Younger* abstention again applies. Although his SCA claim does not arise under federal constitutional law, but rather under federal statutory law, the principles underpinning *Younger* abstention are still in play. *See Berrada Props. Mgmt. Inc. v. Romanski*, 608 F. Supp. 3d 746, 751 (E.D. Wis. 2022) ("*Younger* abstention applies when federal intervention would . . . accomplish[] the kind of interference that *Younger* sought to prevent, even if the specifics are distinguishable." (collecting cases)). As with Werling's Fourth Amendment claim, allowing Werling's SCA claim for damages to proceed would improperly interfere with the State Case by creating the possibility of inconsistent judgments. For the same reasons detailed in Section 3.3.1, none of the articulated exceptions to *Younger*

abstention apply. Therefore, at this juncture, the Court must abstain from hearing Werling's SCA claim and must stay the case.

The Court additionally notes that a plaintiff raising an SCA claim against the United States must first present the claim "to the appropriate department or agency under the procedures of the Federal Tort Claims Act." 18 U.S.C. § 2712(b)(1). Werling has not specified whether he has done so. "A plaintiff's failure to exhaust administrative remedies before he brings suit [under the Federal Tort Claims Act] mandates dismissal of the claim." *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). If Werling later proceeds in this case, he must demonstrate that he exhausted administrative remedies on his SCA claim.

#### 3.3.3 *Brady* Due Process Claim

A plaintiff may pursue money damages for a claim that a federal law enforcement agent violated his right to due process by failing to disclose exculpatory material as required by *Brady*. *Carvajal v. Dominguez*, 542 F.3d 561, 563 (7th Cir. 2008) (examining *Brady* claim against Drug Enforcement Agency officer in case where the plaintiff was prosecuted and acquitted). This type of claim requires the plaintiff to plead that "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, 'materiality.'" *Id.* at 566–67 (citing and quoting *Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006); *United States v. Bland*, 517 F.3d 930, 934 (7th Cir. 2008); and *Ienco v. Angarone,* 429 F.3d 680, 683 (7th Cir. 2005)). "Evidence is 'suppressed' when (1) the prosecution failed to disclose the evidence in time for the defendant to make

use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Id.* at 567 (quoting *Ienco,* 429 F.3d at 683). "Evidence is 'material' 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Strickler v. Greene,* 527 U.S. 263, 280 (1999) and citing *Bland,* 517 F.3d at 934).

Werling alleges that the FBI's communications with Meta representing that there was an emergency that required disclosure of his private messages are exculpatory evidence that could have a material effect on the outcome of his state case. ECF No. 1 at 5. The Court will assume that he means to argue that this material is exculpatory in that it could be used to test whether there was a sufficient legal basis for Mazur and the FBI to request Werling's private messages from Meta, and to argue for suppression of those private messages in the State Case. Werling further alleges that in June 2022 the FBI suppressed or failed to turn over these communications between it and Meta. This is enough to state a *Brady* due process claim sufficient to survive screening. Whether Werling's specific factual allegations can sustain a *Brady* claim as a matter of law is subject to being revisited at a later stage of this case—specifically, after the conclusion of the State Case, when it will be clear whether Werling was convicted or acquitted and whether the private messages that Werling says form the basis of the state charges were ever introduced as evidence. (If they were not, then he likely cannot satisfy the materiality requirement.) The Court also highlights that the Seventh Circuit is "doubtful, given the considerations in deciding whether to recognize a *Bivens* cause of action, that such an action exists for a *Brady* violation." *Carvajal*, 542 F.3d at 570.

*Younger* abstention again applies. Allowing Werling's *Brady* due process claim for damages to proceed would improperly interfere with the State Case by creating the possibility of inconsistent judgments. For the same reasons detailed in Section 3.3.1, none of the articulated exceptions to *Younger* abstention apply. Therefore, the Court must abstain from hearing Werling's *Brady* due process claim and will stay the case.

## 4. CONCLUSION

For the reasons stated above, Werling may proceed on a Fourth Amendment claim, an SCA claim, and a *Brady* due process claim. Because he is indigent and brings non-frivolous claims, his motion for leave to proceed without prepaying the filing fee will be granted. However, the Court must abstain under *Younger* from hearing this case at this time, and it will implement a stay because Werling seeks money damages.

This case will be stayed pending disposition of the State Case. If Plaintiff wishes to reopen this matter when his state criminal case, including any appeals, concludes, he may seek to do so via notice filed in writing on the docket. Any such notice must be filed within **thirty (30) days** of the conclusion of the state criminal case; if Werling does not file a notice within that timeframe, this case will be dismissed without prejudice. The Court will direct that the file in this case be administratively closed in the meantime.

The Court finally notes that, if Werling is convicted in the State Case and seeks to continue this case after the State Case concludes, some or all of his claims may be barred under the doctrine of *Heck v. Humphrey*. 512 U.S. 477, 486–87 (1994) ("[I]n order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,

a [civil rights] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254."); *Okoro v. Callaghan*, 324 F.3d 488, 490 ("[I]f [a plaintiff] makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." (citations omitted)).

Accordingly,

**IT IS ORDERED** that Plaintiff Nicholas Scott Werling's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **STAYED** pending resolution of Plaintiff's state criminal case, Milwaukee County Circuit Court Case No. 2022CF002289, including any appeals;

**IT IS FURTHER ORDERED** that, should Plaintiff seek to reopen this matter upon conclusion of his state criminal case, he must file a notice of his intent to do so within **thirty (30) days** of the conclusion of the state criminal case, including any appeals; failure to timely file such notice will result in dismissal of this case without prejudice; and

**IT IS FURTHER ORDERED** that the Clerk of Court **ADMINISTRATIVELY CLOSE** this action upon entry of this Order.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.